O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

|  |  |
|---|---|
| VAN BA MA<br><br>    Plaintiff on behalf of himself and<br>    all others similarly situated,<br><br>    vs.<br><br>COVIDIEN HOLDING, INC., ET AL.<br>    Defendants. | Case No.: SACV 12-2161-DOC (RNBx)<br><br><br>ORDER GRANTING FINAL<br>APPROVAL OF CLASS ACTION<br>SETTLEMENT [29] |

Before the Court is Plaintiff Van Ba Ma's ("Mr. Ma's") Motion for Final Approval of Class Action Settlement ("Motion" or "Mot.") (Dkt. 29). Defendants Covidien Holding Inc., Tyco Healthcare Group LP, and Micro Therapeutics Inc. (together, "Covidien") filed a Notice of Non-Opposition to this Motion (Dkt. 30).

## I.    BACKGROUND

Mr. Ma brought this action on behalf of himself and all others similarly situated. Ntc. of Removal, Ex. A ("Compl.") at 21. The putative class is composed of: "All persons who are

employed or have been employed by [Covidien] in the State of California who, for the four years prior to the filing of this class action to the present, have worked as non-exempt employees" ("Settlement Class"). *Id.*

Mr. Ma brought eight claims: (1) failure to provide meal periods; (2) failure to provide rest periods; (3) failure to furnish itemized statements; (4) failure to pay wages due and payable; (5) failure to pay wages for hours worked; (6) failure to pay wages upon ending employment; (7) unlawful competition and unlawful business practices; and (8) penalties pursuant to the Private Attorney Generals' Act. Compl. at 25-36.

On December 30, 2013, Mr. Ma moved for preliminary approval of a class action settlement. *See generally* Mot. for Preliminary Approval (Dkt. 22). The Court granted the motion on January 31, 2014. Order, January 31, 2014 (Dkt. 26).

Following preliminary approval, Covidien provided the Claims Administrator, Elizabeth DiTirro, with the court-approved text of the notice packet and a spreadsheet listing the information of class members, including name, last known address, Social Security number, hire date, and, if applicable, termination date. Mot., Ex. 5, Declaration of Elizabeth DiTirro ("DiTirro Decl.") ¶¶ 5-6. Ms. DiTirro sent the settlement notice packets to 1,004 class members. *Id.* ¶ 12. Ms. DiTirro also performed skip traces for returned notice packets, and re-mailed them. *Id.* ¶ 9. Ultimately, twelve notice packets were deemed undeliverable because no updated addresses were found. *Id.* ¶ 11.

Furthermore, on March 7, 2014, Ms. DiTirro sent emails to the addresses of 417 class members whose email addresses were known to Covidien. *Id.* ¶ 22.

After this process, Ms. DiTirro received eight requests for exclusion and no objections. *Id.* ¶¶ 15, 17; Mot., Ex. 2, Decl. of Richard E. Quintilone II ("Quintilone Decl.") ¶ 25. Out of the 1,004 class members, Ms. DiTirro received 636 valid timely claims and 10 valid late claims, which the parties have agreed to accept. DiTirro Decl. ¶ 13. Therefore, 65.34% of the class has filed a claim. *Id.* Mr. Ma now moves for final approval of the class action settlement. *See generally* Mot. (Dkt. 29).

## II.    LEGAL STANDARD

"The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e).  Court approval involves a two-step process: (1) preliminary approval of the settlement; and (2) following a notice period to the class, final approval of the settlement at a fairness hearing.  *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).  The Court may issue final approval of a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *In re Bluetooth Headset prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

Rule 23(e)'s primary concern is "the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." *Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982).  In considering final approval of a proposed settlement, the Court's discretion is guided by the following factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 556, 575 (9th Cir. 2004).  "This list is not exhaustive, and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).  In addition to these factors, the Court may consider the procedure by which the parties arrived at the settlement to determine whether the settlement is truly the product of arm's length bargaining, rather than the product of collusion or fraud.  *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).

The Court's role in evaluating the proposed settlement "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (quoting *Officers for Justice*, 688 F.2d at 625). In evaluating a settlement agreement, it is not the Court's role to second-guess the agreement's terms. *Officers for Justice*, 688 F.2d at 625. "Rule 23(e) wisely requires court approval of the terms of any settlement of a class action, but the power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed." *Evans v. Jeff D.*, 475 U.S. 717, 726 (1986); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("Neither the district court nor this court ha[s] the ability to delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety."). In general, however, there is a strong judicial policy favoring class settlements. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

## III.   ANALYSIS

In order to evaluate whether the settlement is fair, adequate, and reasonable, the Court will consider, in turn, the eight factors identified by the Ninth Circuit. *See Staton*, 327 F.3d at 959; *Hanlon*, 150 F.3d at 1026.

### 1.   Strength of the Plaintiff's Case

In evaluating the terms of the settlement, the Court reviews the strength of the plaintiff's case, including "the probable outcome of a trial on the merits of liability and damages as to the claims, issues, or defenses of the class and individual class members." *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173 (9th Cir. 1977). However, the "fairness hearing is not to be turned into a trial or rehearsal for trial on the merits." *Officers for Justice*, 688 F.2d at 625.

Mr. Ma argues, and the Court agrees, that the "claims likely to lead to recovery are the meal and rest period and rounding time claims." Mot. at 14. Ultimately, as the Parties explained at oral argument, the class was likely to prevail on, at most, $13.5 million of the the total amount sought. The Court finds that Plaintiffs' case was strong on three of its eight

claims.  This factor weighs in favor of final approval because the Plaintiffs are unlikely to recover on the total amount sought.

### 2.     Risk, Expense, Complexity

Other than the risks and expenses that generally attend the prosecution of class actions, this lawsuit is especially risky, expensive, and complex.  The wage-and-hour claims are predicated on facts from facilities across California.  Most importantly, Covidien only recently acquired thirteen of these facilities.  Prior to the acquisition, these thirteen facilities had three different time-keeping policies in place and each involved handwritten timecards.  The expense and difficulty of analyzing these handwritten timecards that were filled out according to different policies weigh in favor of final approval because continued litigation is likely to be costly.

### 3.     Risk of Maintaining Class Action Status

The Court conditionally certified this class on January 31, 2014.  Order, January 31, 2014 (Dkt. 26).  The Court still finds that class status is appropriate.  Parties now point out that in addition to *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), recent decisions by courts in other circuits regarding class actions and Due Process make maintaining a class action riskier than in the past.  The Court finds that this factor weighs slightly in favor of final approval because while there is some risk, the risk is not great.

### 4.     Amount Offered in Settlement

Courts consider the amount offered in the settlement, but do not "judge[] [the amount] against a hypothetical or speculative measure."  *Officers for Justice*, 688 F.2d at 625.  Rather, a court's role is to determine whether the settlement amount falls within the range of reasonableness.  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).

Here, the settlement fund is $2,500,000.  Mr. Ma originally estimated the total damages to be $27,336,327.20.  However, as the Court pointed out above, the actual likely recovery is $13.5 million.  Therefore, the settlement constitutes 9.1% of the total potential value of the action, if the class attained a full, favorable trial verdict on all causes of action; and 18.5% of the likely potential value of the action, if the class attained a favorable trial verdict on its strong

causes of action.  The average payment per claimant is $2,528.44.  A settlement is not unfair, unreasonable, or inadequate merely because it "amount[s] to only a fraction of the potential recovery."  *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979).  Indeed, it is not uncommon for a class action settlement to amount to approximately 10% of the total potential value.  *See, e.g.*, *In re Omnivision Techs.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2007).  The Court finds that this factor weighs in favor of final approval because the settlement is somewhere between 9% and 18% of what the plaintiffs were likely going to recover.

### 5.      Extent of Discovery Completed and Stage of Proceedings

There has been a fair amount of, but not extensive, discovery in this matter.  In response to Mr. Ma's first set of discovery requests, Covidien produced thousands of pages of documents, electronic pay and time records, Covidien's policies and procedures, payroll records, and job descriptions.  Quintilone Decl. ¶ 7.  Covidien deposed Mr. Ma and Mr. Ma deposed Covidien's Rule 30(b)(6) witness.  *Id.* ¶ 9.  After that, it appears that this action moved into a settlement, as opposed to a litigation, posture.  The Court finds that this factor weighs neither in favor of nor against final approval.

### 6.      Experience and Views of Counsel

"With regard to class action settlements, the opinions of counsel should be given considerable weight both because of counsel's familiarity with this litigation and previous experience with cases."  *West v. Circle K Stores, Inc.*, 2006 U.S. Dist. LEXIS 76558, at *17-18 (E.D. Cal. 2006).  Class counsel has shown that he has significant experience in prosecuting wage and hour class actions, including twenty in California state and federal courts.  *See* Quintilone Decl. ¶ 4.  The Court finds that his opinion that this settlement is fair, adequate, and reasonable is entitled to considerable weight.  *See Staton*, 327 F.3d at 959.  Therefore, this factor weighs in favor of final approval.

### 7.      Presence and Views of a Governmental Participant

This suit was removed on the basis of CAFA.  *See generally* Ntc. of Removal.  Covidien notified both federal and state officials to provide them with an opportunity to intervene.  Mot.

at 20.  Those federal and state officials have not raised any concerns with the settlement.  *Id.* at 20-21.  Therefore, this factor weighs slightly in favor of final approval.

### 8.    Reaction of Class Members to the Proposed Settlement

Generally, "[i]f only a small number of objectors are received, that fact can be viewed as indicative of the adequacy of the settlement."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000).

Here, there are 1,004 class members.  DiTirro Decl. ¶¶ 5-6.  Eight class members opted out.  *Id.* ¶¶ 15.  No class members have objected.  *Id.* ¶ 17.  A total of 646 claims were filed.  DiTirro Decl. ¶ 13.  The fact that less than 1% of the class opted out, none objected, and 65.34% filed a claim suggests that the settlement is fair, adequate, and reasonable.  Therefore, this factor strongly weighs in favor of final approval.

## IV.    DISPOSITION

For the reasons explained above, the Court GRANTS final approval of this class settlement.  Any further dates scheduled for this suit are VACATED.  Parties are ordered to file final settlement documents to this Court on or before June 20, 2014.


DATED:    May 30, 2014


*David O. Carter*
_____
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE